# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

In re:

G8 RE CAPITAL, LLC, ET AL.,                             Case No.: 3:22-bk-00144-JAF

    Debtor.                                                        Chapter 7
_____/

ROBERT ALTMAN, as Chapter 7 Trustee,
                                                                 Adv. Proc. No.

    Plaintiff,

v.

CEDRIC DEWAYNE GRIFFIN,

    Defendant.
_____/

**COMPLAINT TO AVOID FRAUDULENT TRANSFERS OF PROPERTY, TURNOVER OF PROPERTY OF THE ESTATE, CONVERSION, AND UNJUST ENRICHMENT**

Plaintiff, Robert Altman, as Chapter 7 Trustee (the "Plaintiff" or "Trustee"), by and through undersigned counsel, hereby sues Defendant Cedric Dewayne Griffin ("Griffin" or "Defendant"), to avoid actual and constructive fraudulent transfers, recover the transfer of certain property, pursuant to 11 U.S.C. §§ 544, 548, and 550 and §§ 726.105, 726.106, and 726.108, Florida Statutes, conversion of property, and unjust enrichment and in support thereof says:

### I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (H) and (O).

79913925

## II.     Factual Background

**The Bankruptcy Case**

4. On January 21, 2022, petitioning creditors, Renata Hannans, Darnell and Chrystal Mote, as husband and wife, Leonard Patterson, Antwan Richardson, and Darnell Mote, individually, filed an involuntary petition for relief under Chapter 7 of title 11 of the United States Code against involuntary debtor, G8 RE Capital, LLC aka G8 Equity aka G8 RE Capital ("Original Debtor"), initiating the case styled *In re G8 RE Capital, LLC aka G8 Equity aka G8 RE Capital*, Case No: 3:22-bk-00144-JAF (the "Bankruptcy Case").

5. The Original Debtor did not file an answer or other responsive pleading to the involuntary petition and on February 23, 2022, the Court entered an Order for Relief. The Trustee was thereafter appointed Chapter 7 Trustee in the Bankruptcy Case.

6. On April 28, 2022, the Trustee filed a Motion to Consolidate Estates of Alter Ego Entities with Debtor's Estate. On May 27, 2022, the Court granted the Trustee's Motion which substantively consolidated the following entities with the Debtor in this Bankruptcy Case, G8 RE Capital, LLC: G8 Equity LLC; G8 WWW, LLC; G8 Industries, LLC; G8 Realty, LLC; 24ENT, LLC; Staffmerge, LLC; Newzkast, LLC; Ceecrets, LLC; RealEstateCake, Inc. ("RealEstateCake"); Haul Broker, LLC; Residential Movement Corp.; Premier Coast Holdings, Inc.; and New Home Rebate Realty, LLC (Georgia LLC) (collectively and together with the Original Debtor, the "Consolidated Debtors").

**The Parties**

7. Each of the Consolidated Debtors is a Florida limited liability company with the exception of New Home Rebate Realty, LLC, a Georgia limited liability company, and

RealEstateCake, a Delaware corporation authorized to transact business in Florida during the relevant period.

8. Each of the Consolidated Debtors has its principal place of business in Jacksonville, Florida.

9. Griffin is the principal of each of the Consolidated Debtors.

10. Griffin is an individual residing in Duval County, Florida.[1]

11. Griffin was a licensed real estate broker and owned numerous businesses in addition to the Consolidated Debtors, including real estate companies.

**The Original Debtor's Business**

12. The Original Debtor entered into agreements called "Investment Note Payable Agreements" (the "Notes") with numerous individuals and corporate entities (the "Investors" or "Creditors"), by which the Investors loaned money to the Original Debtor. The Notes stated that the money loaned by the Investors would be used by the Original Debtor "in regards to real estate investment deals." In return for the initial loan, the Notes promised the Investors payment of interest at very high rates and an opportunity to reinvest the Investor's principal.

13. Since his appointment, the Trustee has investigated the Consolidated Debtors' assets and affairs. As a result of that investigation, the Trustee has concluded that the Consolidated Debtors, through their principal, Griffin, were operating a "Ponzi scheme."

14. Funds paid by newer Investors were used to repay prior Investors and/or pay "interest" to prior Investors participating in the Ponzi scheme.

---

[1] Griffin turned himself in to the Jacksonville Sherriff's Office in connection with two pending criminal cases and is currently being held in custody without bond at the Duval County Jail.

3

79913925

15. The interest was paid as purported profits – i.e., amounts in excess of the principal amount loaned by the Investors.

16. The source of these interest payments was not from bona fide returns on investments or the operations of the Consolidated Debtors, but rather from funds received from other Investors seeking to reap high interest payments from the Consolidated Debtors in exchange for principal amounts loaned under the Notes or otherwise agreed upon between the Investors and the Consolidated Debtors.

17. Additionally, monies were comingled between the Consolidated Debtors. Funds given to Griffin by Investors for their Notes with the Original Debtor were deposited into bank accounts of the Consolidated Debtors and funds from the Consolidated Debtors were used to pay the fictitious investment "returns," categorized as interest payments on the face of the Notes, to the Investors.

18. Moreover, Griffin used RealEstateCake, a purported business venture based on the development of a real estate "app," and related transfers in furtherance of the Ponzi scheme. Funds given to Griffin by "investors" for purchase of shares in RealEstateCake, Inc. were deposited into bank accounts for the Original Debtor and other Consolidated Debtors and said funds were used to pay fictitious investment "returns" to Investors pursuant to the Notes. Funds from the Consolidated Debtors, including Original Debtor, were also used to pay fictitious investment "returns" and return of principal investment to RealEstateCake shareholders.

19. Monies were also comingled between the Consolidated Debtors and other entities used by Griffin in furtherance of the Ponzi scheme but not consolidated with the Consolidated Debtors at this time ("Non-Consolidated Entities"), including Residential Florida, LLC ("Residential Florida"), a Florida limited liability company, Residential Georgia, LLC

("Residential Georgia"), a Georgia limited liability company, and Residential Alabama, LLC ("Residential Alabama"), an Alabama limited liability company, the principal of each of which is Griffin. Some of the funds given to Griffin by Investors for their Notes with the Original Debtor were deposited into bank account(s) for the Non-Consolidated Entities and funds from Non-Consolidated Entities were used to pay the fictitious "returns" or interest to some of the Investors.

**Griffin Criminal and Civil Cases**

*State v. Griffin, Case No. 2022-CF-00235*
*In the Circuit Court of the Fourth Judicial Circuit in and for Duval County Florida*

20. In March 2022, the Jacksonville State Attorney's Office charged Griffin with multiple counts of grand theft for failing to pay real estate commissions to real estate agents working for Griffin's real estate company, Premier Coast Realty. *State of Florida v. Cedric Dewayne Griffin*, Case No. 22-CF-002535. Griffin was arrested and released on bond, but failed to appear for the final pretrial hearing on May 4, 2023, and a capias for his arrest was issued and his bond forfeited.

21. Griffin evaded law enforcement until January 27, 2025 when he turned himself in to the Jacksonville Sheriff's Office. In the course of Griffin's arrest, $81,685.96 in cash was seized. Griffin was arraigned on February 13, 2025 and is being held without bond.

*State v. Griffin, Case No. 2024-CF-003129*
*In the Circuit Court of the Fourth Judicial Circuit in and for Duval County Florida*

22. On March 26, 2024, the Jacksonville State Attorney's Office charged Griffin with one count of organized fraud in connection with Griffin's Ponzi scheme and a capias for his arrest was issued. *State of Florida v. Cedric Dewayne Griffin*, Case No. 24-CF-003129. In connection with this criminal case, law enforcement interviewed 56 individuals who allegedly invested in Griffin's Ponzi scheme, many of whom filed Proof of Claims in the Bankruptcy Case. The capias

was served on Griffin when he turned himself in on January 27, 2025. Griffin was arraigned on February 13, 2025.

### *SEC v. Griffin*, Case No. 3:23-cv-00539-BJD-PDB
### U.S. District Court, Middle District of Florida, Jacksonville Division

23. On May 4, 2023, the Securities and Exchange Commission filed a complaint against Griffin based on Griffin's alleged securities offering fraud and Ponzi scheme. *SEC v. Cedric Dewayne Griffin*, Case No. 3:23-cv-00539-BJD-PDB (Compl. for Injunctive and Other Relief, ECF No. 1) (M.D. Fla., May 4, 2023). The complaint alleges that "[f]rom no later than January 2020 until at least December 2021 . . . , Griffin raised at least $5,895,024 from 103 investors through the sale of G8 Companies' promissory notes, by telling a series of misrepresentations." (ECF No. 1 at 1.) The SEC alleges that Griffin told potential investors he would use investor funds to purchase, rehabilitate, and resell real estate, but he did not purchase any real estate. (*Id.* at 2.) Instead, the SEC alleges, "Griffin used investor funds to line his own pockets and to pay prior investors their purported investment returns in Ponzi-like fashion." (*Id.*) The SEC also alleges, in relevant part, as follows:

> In addition, Griffin used investor funds for his personal use.
>
> From March 2021 until December 2021, Griffin caused $141,699 in investor funds be transferred to Griffin's personal bank accounts.
>
> From November 2020 until December 2021, Griffin made cash withdrawals from the G8 Entities' bank accounts totaling approximately $519,000 and from January 2020 until December 2021, Griffin spent at least $161,609 on personal expenditures from comingled funds that included investor money, including but not limited to payments to luxury retailers, jewelry stores, and church donations.

(ECF. No. 1 at 15-16 (paragraph numbers omitted).)

24. Griffin evaded service and concealed his whereabouts and, on September 6, 2024, the Florida Department of State accepted substitute service of process for Griffin. *See SEC v.*

*Griffin*, Case No. 3:23-cv-00539-BJD-PDB. (ECF Nos. 16 & 19). A Clerk's Entry of Default was entered on October 8, 2024 (ECF No. 22), and a Motion for Default Judgment against Griffin is currently pending before the District Court (ECF No. 31).

**Relationship Between Consolidated Debtors and Defendant**

25. As noted above, Griffin is the principal, managing member, and/or president of each of the Consolidated Debtors. (*See* Bankr. Case Doc. 37 at 3-4, Trustee's Motion to Substantively Consolidate Estates of Alter Ego Entities With Debtor's Estate; Bankr. Case Doc. 41, Order granting Motion to Substantively Consolidate).

26. The Involuntary Case was initially filed after the petitioning creditors learned that Griffin was using the Consolidated Debtors' businesses and their financial institution accounts to fraudulently secure investments that would allegedly be used in real estate investment deals. But the funds were never invested in real estate and, instead, funds from subsequent Investors/Creditors were used to pay returns to earlier investors and for Griffin's personal use.

**Transfers and Claims**

27. The bank records obtained by the Trustee show that Griffin transferred the investments from Investors/Creditors to bank accounts of the Consolidated Debtors, thereby comingling the funds.

28. The bank records also show that Griffin used the funds in the accounts titled in the name of the Consolidated Debtors for his personal rather than corporate expenses. Griffin used funds in Consolidated Debtors' bank accounts to pay for Griffin's personal expenses, including credit card expenses, vehicle related expense, gasoline, groceries, meals, hotels, airfare, gifts, jewelry, luxury goods, church donations, etc. The records also show that Griffin withdrew large

amounts of cash from the Original and Consolidated Debtors' bank accounts and transferred funds from the Original and Consolidated Debtors' bank accounts to his personal bank accounts.

29. To date, creditors of the Bankruptcy Estate, including Investors/Creditors, have filed 104 claims and allowed claims total $5,820,501.00 (the "Allowed Claims"). A chart listing the Allowed Claims is attached as **Exhibit A**.

30. The full amount of the Allowed Claims constitute fraudulent transfers (the "Transfers") from the Debtor to Griffin, as all amounts Griffin received from creditors of this estate were used fraudulently, either for Griffin's personal expenses or to repay returns to other "investors" in furtherance of the Ponzi scheme.

31. The Trustee has retained the undersigned attorneys to represent the bankruptcy estate's interests in this action and is obligated to pay them a reasonable fee for their services.

32. All conditions precedent to the filing of this action have occurred or have been waived.

## COUNT I
## ACTION TO AVOID ACTUAL FRAUDULENT TRANSFERS
## PURSUANT TO 11 U.S.C. § 548(a)(1)(A)

33. The Trustee incorporates and realleges the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

34. 11 U.S.C. § 548(a)(1)(A) provides:

> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on

or after the date that such transfer was made or such obligation was incurred, indebted … [.]

*See* 11 U.S.C. § 548(a)(1)(A).

35. The Consolidated Debtors made the Transfers to Defendant Griffin within two (2) years of the Petition Date.

36. The Transfers were made with the actual intent to hinder, delay or defraud present and future creditors.

37. Pursuant to § 550(a), the recovery of property for the benefit of the Consolidated Debtors' estates is authorized to the extent the Transfers are avoided under § 548(a)(1)(A).

WHEREFORE, Plaintiff, Robert Altman, as Chapter 7 Trustee, respectfully requests the Court enter a Final Judgment in favor of the Trustee and against the Defendant Cedric Dewayne Griffin, (i) declaring the Transfers fraudulent transfers (ii) avoiding the Transfers, (iii) granting a money judgment against the Defendant for the value of the Transfers; and (iv) granting such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### ACTION TO AVOID CONSTRUCTIVE FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B)

38. The Trustee incorporates and realleges the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

39. 11 U.S.C. § 548(a)(1)(B) provides:

> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (B)

     (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

     (ii)
(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

     (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

     (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

     (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

*See* 11 U.S.C. § 548(a)(1)(B).

40. The Consolidated Debtors made the Transfers to Defendant Griffin within two (2) years of the Petition Date.

41. The Consolidated Debtors received less than reasonably equivalent value from the Defendant in exchange for the Transfers.

42. As of the date of the Transfers, the Consolidated Debtors were insolvent, or the Consolidated Debtors became insolvent as a result of the Transfers.

43. As of the date of the Transfers, the Consolidated Debtors were engaged in a business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with the Consolidated Debtors was an unreasonably small capital.

44. As of the date of the Transfers, the Consolidated Debtors intended to incur, or believed that the Consolidated Debtors would incur, debts that would be beyond the Consolidated Debtors' ability to pay as such debts matured.

45. Pursuant to § 550(a), the recovery of property for the benefit of the Consolidated Debtors' estates is authorized to the extent the Transfers are avoided under § 548(a)(1)(B).

WHEREFORE, Plaintiff, Robert Altman, as Chapter 7 Trustee, respectfully requests the Court enter a Final Judgment in favor of the Trustee and against the Defendant Cedric Dewayne Griffin, (i) declaring the Transfers fraudulent transfers; (ii) avoiding the Transfers; (iii) granting a money judgment against the Defendant for the value of the Transfers; and (iv) granting such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
## ACTION TO AVOID ACTUAL FRAUDULENT TRANSFER
## PURSUANT TO 11 U.S.C. § 544 AND FLA. STAT. § 726.105(1)(a)

46. The Trustee incorporates and realleges the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

47. This is an action against Defendant Griffin to avoid and recover fraudulent transfers of property pursuant to 11 U.S.C. §§ 544(b)(1) and 550 and §§ 726.105(1)(a) and 726.108, Fla. Stat.

48. 11 U.S.C. § 544(b) provides in relevant part:

> (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

49. Section 726.105(1)(a), Fla. Stat., provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor …[.]

11

*See* § 726.105(1)(a), Fla. Stat.

50. There is at least one actual holder of an allowed unsecured claim.

51. The Consolidated Debtors made the Transfers to Griffin within four years of the Petition Date.

52. The Transfers were made with the actual intent to hinder, delay or defraud present and future creditors of the Consolidated Debtors.

53. The Transfers are avoidable, and should be avoided, pursuant to §§ 726.105(1)(a) and 726.108, Fla. Stat. and § 544(b)(1) of the Bankruptcy Code.

54. Pursuant to § 550(a) of the Bankruptcy Code, the recovery of property for the benefit of the Consolidated Debtors' estates is authorized to the extent the Transfers are avoided under § 544(b)(1) and §§ 726.105(1)(a) and 726.108, Fla. Stat.

WHEREFORE, Plaintiff, Robert Altman, as Chapter 7 Trustee, respectfully requests the Court enter a Final Judgment in favor of the Trustee and against the Defendant Cedric Dewayne Griffin, (i) declaring the Transfers fraudulent transfers; (ii) avoiding the Transfers, (iii) granting a money judgment against the Defendant for the value of the Transfers; and (ii), granting such other and further relief as the Court deems just and proper.

**COUNT IV**
**ACTION TO AVOID CONSTRUCTIVE FRAUDULENT TRANSFER OF PROPERTY PURSUANT TO 11 U.S.C. § 544 AND FLA. STAT. § 726.105(1)(b)**

55. The Trustee incorporates and realleges the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

56. This is an action against Defendant Griffin to avoid and recover fraudulent transfers of property pursuant to 11 U.S.C. §§ 544(b)(1) and 550 and §§ 726.105(1)(b), 726.106(1) and 726.108, Florida Statutes.

57. Section 726.105(1)(b) provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

*See* § 726.105(1)(b), Fla. Stat.

58. The Consolidated Debtors made the Transfers to the Defendant within four (4) years of the Petition Date.

59. The Consolidated Debtors received less than reasonably equivalent value from the Defendant in exchange for the Transfers.

60. As of the dates of the Transfers, the Consolidated Debtors were insolvent, or the Consolidated Debtors became insolvent as a result of the Transfers.

61. As of the date of the Transfers, the Consolidated Debtors were engaged in a business or a transaction, or were about to engage in a business or a transaction, for which the remaining assets of the Consolidated Debtors were unreasonably small in relation to the business or transaction.

62. As of the date of the Transfers, the Consolidated Debtors intended to incur, or believed or should have believed that they would incur, debts beyond their ability to pay as they became due.

63. Pursuant to §§ 726.105(1)(b), 726.106(1), and 726.108(1)(a), Fla. Stat. and § 544(b)(1) of the Bankruptcy Code, the Transfers are avoidable and should be avoided.

64. Pursuant to § 550(a) of the Bankruptcy Code, the recovery of property for the benefit of the Consolidated Debtors' estates is authorized to the extent the Transfers are avoided under § 544(b)(1) and §§ 726.105(1)(b), 726.106(1), and 726.108, Fla. Stat.

WHEREFORE, Plaintiff, Robert Altman, as Chapter 7 Trustee, respectfully requests the Court enter a Final Judgment in favor of the Trustee and against the Defendant Cedric Dewayne Griffin, (i) declaring the Transfers fraudulent transfers; (ii) avoiding the Transfers, (iii) granting a money judgment against Defendant for the value of the Transfers; and (iv), granting such other and further relief as the Court deems just and proper.

## COUNT V
## RECOVERY OF AVOIDED TRANSFERS
## PURSUANT TO 11 U.S.C. § 550(a)

65. The allegations contained in Paragraphs 1 through 32 are realleged and incorporated by reference herein.

66. Section 550 of the Bankruptcy Code provides that if a transfer is avoided under, *inter alia*, Sections 544 or 548 of the Bankruptcy Code, Plaintiff may recover the property or, if the court orders, the value of the property transferred from the initial transferee or the entity for whose benefit such transfers were made, or any immediate or mediate transferee of such initial transferee.  11 U.S.C. § 550(a).

67. Pursuant to §§ 544, 547, and 548 of the Bankruptcy Code, and §§ 726.105, 726.106, and 726.108, Florida Statutes, the Trustee may avoid the Transfers to Griffin.

68. Pursuant to Section 550(a), the Trustee may recover for the benefit of the estate the avoided Transfers from Defendant, either as initial transferee or immediate transferee of the Transfers.

WHEREFORE, Plaintiff, Robert Altman, as Chapter 7 Trustee, respectfully requests this Court find that Plaintiff is entitled to recover the Transfers pursuant to 11 U.S.C. § 550 and enter judgment against Defendant Cedric Dewayne Griffin in favor of Plaintiff in an amount equal to the Transfers, plus all interest, costs and attorneys' fees as may be allowed by law.

## COUNT VI
## ACTION FOR CONVERSION

69. The allegations contained in Paragraphs 1 through 32 are realleged and incorporated by reference herein.

70. The Consolidated Debtors had a possessory right and interest to the funds in their financial institution accounts.

71. Griffin converted funds in the Consolidated Debtors' financial institution accounts in the form of withdrawals, wire transfers, debits, checks, payments and other transfers.

72. The Consolidated Debtors and their creditors were deprived of the use of the funds converted by Griffin.

73. As a direct and proximate result of this conduct, the Consolidated Debtors and their creditors have not had the use of the funds converted by Griffin.

74. By reason of the above, the Consolidated Debtors are entitled to an award of compensatory damages for the total amount of the Allowed Claims filed by the creditors in the amount of $5,820,501.00.

WHEREFORE, Robert Altman, as Chapter 7 Trustee, demands the entry of judgment against Defendant Cedric Dewayne Griffin for compensatory damages for the total amount of

15

Allowed Claims filed by the creditors of this estate as shown in Exhibit A, along with an award of pre-judgment interest and costs, and for such other relief and this Court may deem just and appropriate.

## COUNT VII
## ACTION FOR UNJUST ENRICHMENT

75. The allegations contained in Paragraphs 1 through 32 are realleged and incorporated by reference herein.

76. The Consolidated Debtors conferred a benefit upon Griffin when the Debtors transferred their funds and property to Griffin without receiving any value in exchange therefor.

77. Griffin accepted and retained the funds and property transferred by the Consolidated Debtors and received additional transfers, interest, profits, and other enhancements as a result of these transfers.

78. Equity and good conscience require full restitution by Griffin of the Consolidated Debtors' funds and property as well as any additional appreciation, interest, profits and other enhancements resulting therefrom.

79. The acceptance and retention of the Consolidated Debtors' funds and property as well as any additional appreciation, interest, profits, and other enhancements resulting therefrom has unjustly enriched Griffin to the detriment of the Consolidated Debtors and the Debtors' creditors.

80. The Consolidated Debtors lack an adequate remedy at law.

WHEREFORE, Robert Altman, as Chapter 7 Trustee, demands the entry of judgment against Defendant Cedric Dewayne Griffin in an amount equal to the value of the property Griffin improperly and illegally caused the Consolidated Debtors to transfer to himself, constituting the total amount of Allowed Claims filed by the creditors of this estate as shown in Exhibit A, along

with an award of pre-judgment interest and costs, and for such other and further relief as this Court deems just and appropriate.

Dated: April 4, 2025

AKERMAN LLP

By: */s/ David E. Otero*
Christian P. George
Florida Bar No. 41055
Email: christian.george@akerman.com
David E. Otero
Florida Bar No. 651370
Email: david.otero@akerman.com
Raye C. Elliott
Florida Bar No. 018732
Email: raye.elliott@akerman.com
Mariana Muñoz
Florida Bar No. 1000994
Email: mariana.munoz@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

*Attorneys for Robert Altman, Chapter 7 Trustee*

# Exhibit A

| Claim No. | Allowed Claim | Claimant Name |
|---|---|---|
| 2 | $40,000.00 | Antwan Richardson |
| 3 | $60,000.00 | Darnell and Chrystal Mote |
| 4 | $30,000.00 | Darnell Mote, Individually |
| 5 | $25,000.00 | Leonard Patterson |
| 6 | $30,000.00 | Renata Hannans |
| 10 | $50,000.00 | JERALD AND TONISHA YOUNG |
| 11 | $205,000.00 | ASHLEY HODGES |
| 13 | $30,000.00 | GWENDOLYN HYMAN |
| 14 | $25,000.00 | LITTLE GENERAL HYMAN |
| 15 | $20,000.00 | MARCIA JACKSON |
| 16 | $2,000.00 | Lisa McHellen & Chaddrick Banks |
| 18 | $16,500.00 | MELISSA MENDOZA |
| 19 | $53,000.00 | BOBBY KELLY JR. |
| 20 | $20,000.00 | DESTINEE HARVEY |
| 21 | $110,000.00 | Louis Gilmore |
| 24 | $37,500.00 | XAVIER DAVIS |
| 26 | $20,000.00 | ROBERT AND HIEN ROBINSON |
| 27 | $96,866.00 | ANTHONY POLLARD |
| 28 | $10,000.00 | JAMAL KEATON |
| 29 | $30,000.00 | O'Lashawna Seymore |
| 30 | $30,000.00 | Raymond Seymore |
| 31 | $20,000.00 | Ronald Johnson |
| 32 | $10,000.00 | Janelle Brown |
| 34 | $34,837.00 | ARTAVIA TURNER |
| 35 | $13,000.00 | WAYNE BENNETT |
| 36 | $40,000.00 | 360 Reality Investment Group, LLC |
| 37 | $51,886.00 | SABRINA STROUP |
| 39 | $10,000.00 | Lamont Paulin |
| 40 | $10,000.00 | Julius Russell |
| 41 | $70,000.00 | YAHVI SALIARD |
| 42 | $900,000.00 | R GUNTER LLC |
| 43 | $10,000.00 | Tenesha Hayes |
| 45 | $20,000.00 | OSKAR JONES |
| 46 | $175,000.00 | RASHEED AYODEJI OKUBOYEJO |
| 47 | $10,000.00 | Kiera Harris |
| 48 | $10,000.00 | Jabulani M Jones |
| 49 | $15,000.00 | ADEDOLAPO POPOOLA |
| 50 | $70,000.00 | Courtney Jones |
| 51 | $28,000.00 | NICOLETTE DAVIS |
| 52 | $65,000.00 | MAKAELA OBI |
| 43 | $112,635.00 | DEON AND ARIEN WILLIAMS |
| 54 | $85,000.00 | DEBREAL SCOTT |
| 55 | $25,000.00 | MATISHA REDMON |
| 56 | $40,386.00 | Ashley N Kelly |
| 57 | $34,500.00 | LATOYA DAVIS |
| 58 | $60,000.00 | Tomisha Hicks |

| | | |
|---|---|---|
| 59 | $66,700.00 | Allyssa Rickerson |
| 61 | $20,000.00 | ENDGO TRUCKING LLC |
| 62 | $20,000.00 | Michael Chatman |
| 63 | $10,000.00 | REGINA OMOITE |
| 64 | $360,000.00 | WENDALL KEITH CLARK |
| 67 | $70,000.00 | RASHAAD DUFFY |
| 68 | $32,731.00 | JALAIA K. SURLES |
| 69 | $85,000.00 | OBI'S ASSISTED LIVING FACILITY |
| 70 | $190,000.00 | SHEREE LARKINS |
| 71 | $28,000.00 | ARIYAH ROBERTSON |
| 72 | $88,000.00 | DANNEL LARKINS |
| 73 | $48,000.00 | Healing Hands of Jacksonville LLC |
| 74 | $57,500.00 | JAJUAN FORDHAM |
| 76 | $190,000.00 | PATRICE JACKSON |
| 78 | $12,000.00 | BRIAN WILLIAMS |
| 79 | $30,000.00 | DERRIS EPKINS |
| 80 | $101,500.00 | DANDRE HENDRICKS |
| 81 | $17,638.00 | RODRIGUEZ LOVINGS |
| 82 | $10,000.00 | KANALA JENKINS |
| 83 | $13,000.00 | VANTRIESE BROWN |
| 84 | $30,250.00 | VINCENT LE |
| 85 | $1,210.00 | Duy le |
| 86 | $10,000.00 | JAMAYLA SCOTT |
| 87 | $20,000.00 | Corey Rivers |
| 88 | $50,000.00 | WILLIE JOHNIGAN |
| 89 | $130,000.00 | Gregory Darnell Brown, Jr. |
| 90 | $15,000.00 | BARBARA WILLIAMS |
| 91 | $26,450.00 | ALEXANDER WEBBER |
| 92 | $22,600.00 | Niya Vollin |
| 93 | $3,000.00 | Jamaree Spikes |
| 94 | $18,250.00 | TERENCE LYNN WASHINGTON |
| 95 | $78,000.00 | Thomas Mcbride |
| 96 | $10,000.00 | Terrell Taylor |
| 97 | $10,000.00 | Wayne Harris, Jr. |
| 98 | $132,000.00 | Louis and Trisha Iglesias |
| 99 | $250,000.00 | Koinonia Holdings LLC |
| 100 | $14,500.00 | ROSHEDIA HOWARD |
| 101 | $20,000.00 | SHAUN JENNINGS |
| 102 | $12,562.00 | Sha'nae Plair |
| 103 | $500,000.00 | TERENZIE BROWN |
| 104 | $155,500.00 | Dr. Wesley C. Mills |
| **TOTAL** | **$5,820,501.00** | |